IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DIANE LOGAN, | ) |
| | ) Civil Action No. 7:10-cv-212 |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Diane Logan ("Logan") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income ("SSI") benefits under the Social Security Act (the "Act"). Logan seeks an award of disability benefits principally due to osteoarthritis of the back and hips, fibromyalgia, and generalized anxiety disorder ("PTSD"). Logan alleges she has been totally disabled since December 1, 2000, but amended the record of the alleged onset date of disability to February 15, 2008, on the advice of her attorney. In his decision, the Administrative Law Judge ("ALJ") concluded that Logan was not totally disabled from February 15, 2008, through December 30, 2009, the date of his decision. (Administrative Record "R." at 27.) In finding that Logan was not disabled, the ALJ determined that Logan has "severe" impairments, but she has a residual functional capacity ("RFC") to perform light work. (R. 20.) Logan, who is proceeding pro se, argues that the evidence shows she is disabled and that the ALJ's decision is not based on substantial evidence. Review of the administrative record reveals that there is no credible evidence to suggest that Logan is disabled from all forms of substantial gainful activity and that

the Commissioner's decision is supported by substantial evidence. As such, it is
**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

At the time of the hearing before the ALJ on December 16, 2009, Logan was 51 years old. She completed high school and has taken some college classes. She has not been significantly employed since 2000, when she first applied for benefits under the Act. Her employment record prior to 2000 is sparse, and none of her employment was performed at the significant gainful activity level. (R. 26.) Logan has applied for and been denied SSI benefits four times. (R. 16.) This is an appeal of the most recent ALJ decision denying her benefits (issued December 30, 2009) and subsequent Appeals Council decision.

Logan sought review by the Appeals Council, which denied her request for review on March 26, 2010. She filed this appeal in federal court on May 21, 2010. The Commissioner filed a motion for summary judgment supported by a memorandum on December 23, 2010. Logan, proceeding pro se, responded with a memorandum in opposition to the Commissioner's motion for summary judgment on January 24, 2011, making this matter ripe for disposition.

### III.

The only issue on appeal is whether the ALJ's decision is supported by substantial evidence. Review of the evidence in the administrative record reveals that substantial evidence supports the ALJ's decision, and Logan has not met the burden of establishing that she was totally disabled.

A. Factual Background and Medical Records

Logan has complained of urinary incontinence since 2003. On November 12, 2008, Logan was examined by Dr. Minks for urge incontinence. He recommended cessation of tobacco, alcohol, and caffeine use. (R. 563.) On January 28, 2009, Logan saw Dr. Chun for incontinence. Dr. Chun reported improved symptoms, and she noted that Logan continued to use caffeine, alcohol, and tobacco despite being counseled that they were bladder stimulants. (R.

560.) Logan had made "much improvement with behavior modification, however, [she] was unable to continue with compliance," so Dr. Chum recommended that she restart physical therapy. (R. 560.) When Logan asked Dr. Chun to render an opinion that she was disabled, Dr. Chun responded that she could not render such an opinion based on Logan's incontinence. (R. 560.)

Logan alleges back problems since at least 2004. (R. 564-65.) On December 27, 2006, before her date of alleged onset, Logan was evaluated by an orthopedist. In his report, he mentioned that Logan had seen a chiropractor but did not show up to her appointments on time and did not complete the treatment the chiropractor recommended. (R. 338.) The orthopedist diagnosed back pain due to muscle weakness. He noted that she was not a candidate for surgery, and prescribed physical therapy and non-steroidal anti-inflammatory medications. (R. 338.) From February 15, 2008, the date of alleged onset, Logan's medical records indicate she continued to complain of back pain. On December 10, 2008, an X-ray revealed that Logan's hips and lower back were intact, but she had osteoarthritis. (R. 582.) On both June 4, and July 2, 2009, Logan was examined and treated at Revival Pain Center. Each time, the physician advised Logan that an intravenous pain procedure was medically necessary to improve pain and level of function and to minimize the need for opioids, but Logan refused to undergo the procedure. (R. 648.) At each of her two visits to Revival Pain Center, she tested "positive for opiates, documenting non-compliance, unreliability, and potential for abuse." (R. 648.) There is no recent record of treatment for back problems by means other than pain medication. On October 10, 2008, an MRI of Logan's back revealed that most of her spine was normal, but she had "minimal facet joint degenerative changes involving the lower lumbar spine." (R. 583.)

A laboratory tested Logan in February 2008 to determine the cause of her pain. On February 28, 2008, her doctor discussed the results of the test with her, telling her that the lab results revealed no objective reason for her pain. (R. 441.) In the doctor's notes from this visit, it is reported that Logan said, "I need a disability doctor. I no longer have Medicaid." (R. 441.) The doctor also noted that Logan's COPD was "mild." (R. 441.)

There is very little in the record pertaining to Logan's fibromyalgia. In May 2008, Logan arrived at an emergency room with a complaint of increased pain allegedly due to fibromyalgia. She asked for prescription pain medicine and received some. (R. 467.) In May 2009, Dr. Minks filled out a form related to Logan's application for state welfare benefits administered under the Department of Social Services. He checked a box indicating that Logan was unable to work for more than 60 days and cited fibromyalgia as the reason. (R. 510-511.) Next to the box he checked indicating that Logan could not participate in employment or training activities, Dr. Minks specified that he believed Logan was precluded from these activities for a period of one year. (R. 510-511.) He also checked a box indicating that Logan was not complying with prescribed physical therapy or medication. (R. 511.) In May 2007, before the date of alleged onset, Logan visited Dr. Minks with complaints of pain, and Dr. Minks' records note that fibromyalgia was one of four possible reasons for her pain. (R. 577.)

The record contains no indication that Logan has been hospitalized for mental health problems. In 2005 and 2006, before the date of alleged onset, Logan received counseling approximately once per month at Mt. Rogers Community Services Board. (R. 314-36.) The notes from those counseling sessions were unremarkable. Logan did not voice any chronic complaints and only complained of increased symptoms when she faced stressful situations, such as custody issues with her daughter and getting a traffic ticket. (R. 314-36.) Logan was taking

Klonopin for depression, but decided to stop taking it and wanted to try something new. (R. 419.) She was prescribed Xanex for anxiety, (R. 419), and it was later reported that it was working well and her anxiety was controlled. (R. 422.) On June 10, 2008, Logan was given a functional assessment rating by the Community Counseling Service. The counselor checked boxes indicating Logan had no impairment and was able to care for herself in the following categories: "1. Nutritional/meal preparation, 2. Money management, 3. Housekeeping, 4. Taking medication, 5. Shopping, 6. Ability to access resources, 7. Social skills, 8. Self care/hygiene, 9. Laundry, 10. Transportation." (R. 473.) At the hearing, Logan testified that she had not had any nightmares recently due to her PTSD. She also stated that she had not been hospitalized for any mental health problem since 1982. (R. 22.)

Ms. Aycock, a licensed clinical social worker, treated Logan from March 2009 to May 2009. On or about May 14, 2009, after Ms. Aycock had met with Logan times, Ms. Aycock filled out an evaluation form that appears to have been given to her by Logan's attorney. Ms. Aycock's report mentions that she had known Logan since 2001 and had counseled her at Mt. Rogers, a public health clinic. (R. 605.) In her evaluation, Ms. Aycock wrote that Logan "has a deep seated personality disorder, which disables her both socially and vocationally." (R. 605.)

B. Expert Witnesses

On April 22, 2008, Dr. Thomas Phillips, M.D., the state agency medical consultant, determined that Logan would be restricted to a light range of work. Dr. Phillips examined Logan and reviewed her medical records. Based on this exam and the medical records, he opined that Logan could lift 10 pounds frequently and 20 pounds occasionally, could stand and/or walk for about six hours in an eight hour workday, and could sit for about six hours in an eight hour workday. (R. 460-65.) Dr. Phillips found that Logan had no other physical limitations to work.

(R. 460-65.) Based on the evidence on record, Dr. Phillips found Logan's statements regarding her symptoms to be partially credible. (R. 465.) On August 14, 2008, Dr. Richard Surrusco examined Logan and opined that she had the RFC to perform a light range of work. (R. 488-94.) Dr. Surrusco's evaluation of Logan's physical abilities was identical to Dr. Phillip's.

On April 22, 2008, Logan was given a psychiatric review by Dr. Richard Milan, the state agency psychologist. (R. 447.) He opined that she suffered from anxiety but that it was controlled. (R. 452.) He further stated that her mental impairments only mildly limited her social functioning and her ability to perform activities of daily living. (R. 457.) Dr. Milan opined that Logan's mental impairments are not severe, and he found Logan's statements to be partially credible. (R. 459.) Another psychologist, Dr. E. Hugh Tenison, evaluated Logan and agreed in all respects with Dr. Milan's opinion. (R. 507.)

C. Substantial Evidence Supports the ALJ's Decision

A review of the record shows that there is substantial evidence to support the ALJ's decision that Logan is not totally disabled under the Act.

First, two impartial medical experts determined that Logan's physical capacity is significantly greater than she purports it to be. Drs. Phillip and Surrusco both opined that Logan can perform many normal physical functions associated with a light range of work, such as sitting, standing, and lifting, for much of the workday. Both doctors determined that Logan's allegations of her pain and lack of functional ability were not totally credible. Furthermore, two psychologists opined that Logan is not significantly affected by mental impairments. The psychologists agreed that Logan's mild mental impairments were controlled well.

Second, objective medical evidence supports the experts' opinions and the ALJ's decision that Logan is not disabled. Logan's medical records show that she is not disabled from

all significant gainful activity. Her bladder incontinence problems significantly improved with behavior modification. Any incontinence problems that continue are likely a result of her refusal to comply with prescribed treatment, as doctors have reported that she failed to complete physical therapy and failed to avoid substances known to be bladder stimulants. Also, Logan's medical records and her own statements and actions support the finding that Logan is not disabled. Medical testing reveals no objective reason for Logan's alleged severe pain. Logan's back pain has been predominantly treated by prescription pain medication, her doctors agree her back problems are not severe enough to warrant surgery, and an MRI of her spine revealed that it was only affected by back problems.

Logan's mental health records likewise show that she is not totally disabled. Her mental impairments do not significantly interfere with her daily activities, and she has not been hospitalized for mental health problems since 1982. Furthermore, records show that Logan's symptoms are controlled with medication.

Third, in addition to the lack of objective medical evidence of Logan's back pain, the ALJ determined that Logan's claims were not totally credible, and there is significant evidence to support his determination. When pain management doctors recommended that Logan undergo intravenous pain procedures to increase her function and decrease her pain and need for opioid drugs, she refused to undergo the procedure, which casts doubt as to her claims of severe pain. Logan's claims of severe back pain are further belied by two drug tests performed at Revival Pain Center that suggest that Logan may have abused and is addicted to opiates. Moreover, the record shows that Logan may have attempted to manipulate a physical work performance evaluation given by Twin County Regional Hospital in order to make her physical impairments appear more severe. (R. 406-410.) The record shows that during her evaluation, Logan "self-

limited" on 63% of the tasks she was to perform. (R. 406-410.) "Self-limiting" indicates that the patient gave minimal effort to complete the task, and "self-limiting" on over 20% of tasks is abnormal. (R. 406-410.) The evaluator's notes also state "inconsistencies were noted between client's reported function and the observed functional performance in the [evaluation]." (R. 406-410.)

Logan's statements from previous hearings also support the ALJ's determination that Logan is not totally credible. In a previous opinion, the ALJ wrote:

> It is clear from the claimant's repeated assertions to medical personnel, psychologists, and at the hearing that the claimant harbors a profound and aggressive belief that she is entitled to disability and is determined to take no course of action, such as seeking employment, that would interfere with her ambition to obtain disability. Claimant stated at the hearing that she had not looked for employment because one could not get disability if one worked and that it was her goal to obtain disability and then to work part time.

(R. 124.) Although these statements were made before the date of alleged onset, the ALJ has broad discretion in determining credibility.

Fourth, the activities in which Logan participates show that she is capable of more than she claims to be and supports the ALJ's decision that she is not totally disabled. The record shows that Logan participates in many normal activities of daily life, which are not significantly limited by her condition. Logan drives by herself and asserts that she is a good driver. (R. 600-602.) She spends time with friends, shops at stores, and attends church. (R. 597-602.) At home, she cooks, types, cleans, and uses a personal computer. (R. 602.) In May 2009, she bought parakeets and reported that she enjoys them. (R. 600.) Logan also told her mental health counselor that she intended to join clubs and attend water aerobics classes two to three times per week. (R. 597-603.) Participation in any one of the aforementioned activities does not necessarily preclude a finding of disability, but the fact that Logan's infirmities do not

significantly impair her ability to participate in most normal activities, along with other substantial evidence, supports the ALJ's finding that Logan is not totally disabled from all significant gainful activity.

Finally, substantial evidence supports the ALJ's decision not to give deference to Ms. Aycock's opinion or Dr. Minks' opinion that Logan is disabled. The opinion of a treating source is not always entitled to great deference or greater weight. The regulations explain that when an opinion is not given controlling weight, the ALJ will "apply the factors listed [below] . . . in determining the weight to give the opinion." 20 C.F.R. § 416.927(d)(2) Relevant factors are the supportability of the opinion, as determined by the evidence presented by the medical source, and consistency of the opinion with the record as a whole. See 20 C.F.R. § 416.927(d)(3), (4). For example, contradictory persuasive evidence can discredit a treating physician's opinion. See Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). Finally, a treating physician's opinion is not given any special deference when the opinion relates to the claimant's ability to work or her RFC. See 20 C.F.R. § 416.927(e)(2) ("Although we consider opinions from medical sources on issues such as. . . your residual functional capacity. . . the final responsibility for deciding these issues is reserved to the Commissioner.").

Ms. Aycock opined that Logan had a personality disorder that disables her socially and vocationally. First, Ms. Aycock's opinion cannot be given controlling weigh to establish whether Logan has a medically determinable impairment. The regulations allow psychologists, but not licensed clinical social workers, to provide evidence to establish a medically determinable impairment. 20 C.F.R. § 416.913(a). Second, Aycock does not support this opinion with objective medical evidence. In fact, her own notes reveal that Logan participates in many normal activities without significant limitation. (R. 597-603.) Third, Aycock's opinion is

not consistent with the record as a whole because the objective medical evidence in the record does not support a finding of disability for Logan. Finally, whether Logan is able to work is a finding reserved for the Commissioner, so Aycock's opinion on this subject cannot be given deference.

Likewise, Dr. Minks' opinion that Logan was unable to participate in employment activities for one year beginning October 23, 2008, cannot be given deference when determining whether Logan is disabled under the Act. A finding of disability under the Act is reserved for the Commissioner. Additionally, his opinion did not cite medical evidence, and it did not specify in what ways Logan's functioning was limited. It simply consisted of a box Dr. Minks checked, indicating that Logan could not participate in employment or training activities. Furthermore, Dr. Minks' medical records do not support a finding that Logan is disabled from a significant gainful activity. The record indicates that Dr. Minks saw Logan six times between 2007 and 2010. (R. 568-81.) His records indicate that Logan had reported significant back pain at some of her visits, but they give no indication of Logan's physical abilities or ability to work and perform tasks. Also, his treatment records did not indicate that he believed Logan was disabled.

Taken as a whole, the record contains sufficient evidence to support the ALJ's decision that Logan was not totally disabled.

## IV.

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's decision. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Logan is free from all infirmity. Careful review of the medical

records compels the conclusion that Logan has not met her burden of establishing that she was totally disabled from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating Logan's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. For these reasons the defendant's motion for summary judgment (Dkt. No. 21) is **GRANTED**. Accordingly, the Commissioner's decision is **AFFIRMED**.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying order to all counsel of record for the Commissioner and to plaintiff Logan.

Entered: April 4, 2011

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge